[No. 7,268.—In Bank.]

ROBERT COSNER *v.* THE BOARD OF SUPERVISORS OF COLUSA COUNTY.

SWAMP LAND — RECLAMATION — APPROVAL OF WARRANT BY BOARD OF SUPERVISORS.—Under the provisions of the Political Code for the reclamation of swamp lands, where the district is situated in different counties, the assessment or charge upon each tract of land is to be paid into the treasury of the county in which the particular tract is situated;

and is to be paid out, for the work of reclamation, upon the warrants of the trustees, approved by the Board of Supervisors of that county.

Id.—Id.—Id.—The provision requiring the approval of the warrants of the trustees by the Board of Supervisors involves the idea of discretion and adjudication, and each Board of Supervisors (where the district extends beyond a single county) has the same discretion, with respect to warrants drawn upon their county, as has the Board where the whole district is included within one county.

Id.—Id.—Id.—APPROVAL—DEFINITION—Presumptively, where the approval of a distinct officer is made necessary to validate or consummate the act of another, it is the intention of the Legislature that he should be invested with the option to sanction officially or to disapprove the act submitted to him. Yet such presumed intention is not conclusive; and if it clearly appears from the nature of the act, or the express language of the context, that the word "approved" is used in a more limited sense, and imposes a mere ministerial or clerical duty, the Court will so hold.

APPEAL from a judgment for the defendants in the Superior Court of Colusa County. HATCH, J.

The defendants demurred to the petition of the plaintiff, and the demurrer was sustained and judgment entered for the defendant.

*A. C. Adams* and *Jackson Hatch*, for Appellant.

*T. J. Hart* and *Richard Bayne*, for Respondent.

The COURT:

This is an application for a writ of mandate commanding the defendant to "approve" warrants drawn by the Trustees of Reclamation District No. 108, in favor of certain persons, whose claims have been allowed by the trustees, in sums respectively equal to the alleged indebtedness of the district to each of such persons.

District No. 108 is situated partly in Yolo and partly in Colusa County. Section 3446 of the Political Code provides for the presentation of a petition by the owners of one half or more of any body of swamped and overflowed lands, susceptible of one mode of reclamation, to the Board of Supervisors "of the county in which the lands, or the greater part thereof, are situated," for the formation of a district.

Section 3448, that when a district is situated partly in different counties the trustees must, after the petition has been

granted (by the Supervisors of the county in which the greater part of the lands are situated), forward a copy of the petition to the clerk of the Board of Supervisors of each of the other counties in which any part of the district may lie.

Section 3455 requires that the trustees of the district shall report to the Board of Supervisors of each county, " the plans of the work and estimates of the cost, together with estimates of the incidental expenses of superintendence, repairs, etc."

By section 3456, " The board by which the district was formed" (that is, the Board of Supervisors of the county in which the greater part of the lands are situated), are commanded to appoint three " commissioners" to assess all the lands within the district.

Section 3458 provides that the assessment or charge upon each tract of land shall be paid into the treasury of the county in which the particular tract is situated.

And section 3465, that a person against whose lands an assessment has been levied must pay to the treasurer the amount of the charge, in coin, " or in warrants of the district drawn by the trustees thereof, and approved by the Board of Supervisors of *the* county."

This can only mean the county into the treasury of which the charge is paid.

Section 3456 requires that the money collected upon an assessment shall be paid into the county treasury as hereinafter provided (as in § 3458), " and paid out for the work of reclamation upon the warrants of the trustees, approved by the Board of Supervisors of the county."

It would seem clear that the approval is to be by the Supervisors of the county into whose treasury the money is paid and upon whose treasurer the particular warrant is drawn by the trustees.

Section 3457 provides, that the warrants drawn by the trustees must after they are approved by the Board of Supervisors (of the county on whose treasurer they are drawn), be presented to the treasurer of the county (who has custody of the portion of the assessment collected in such county).

, Sections 3467 and 3468 read: " The work necessary for reclamation must be executed under the direction and in the manner prescribed by the Board of Trustees. The Board (of

Trustees) must keep accurate accounts of all expenditures, which accounts, and all contracts that may be made by them, are open to the inspection of the *Board of Supervisors* and every person interested."

A reading of the sections of the Political Code will make it sufficiently manifest that the scheme it furnishes is rendered complicated by the provisions which relate to the collection and disbursements of assessments levied in districts situated in more than one county.

If a district could be created only in a single county, and the statute required that the trustees should report to the Board of Supervisors their plans and estimates; that such board should appoint commissioners to assess charges, which should be paid into the County Treasury, and which should be paid out for the work upon warrants of the trustees "approved" by the supervisors—the warrants being presented to the treasurer only after they had been so approved; and that the books and accounts, and all contracts made by the trustees should be open to the inspection of the supervisors—it would not be very difficult to arrive at the true interpretation of the provisions of the code.

It would then be apparent that it was intended that the Board of Supervisors should constitute a check upon the trustees, and that they were vested with general supervisory control over the conduct of the trustees in the matter of contracts, and appropriations of moneys collected.

The word "approve" is to be considered in connection with the action to which it relates. It does not *ex vi termini* necessarily import the exercise of discretion. Presumptively, however, when the "approval" of a distinct officer is made necessary to validate or consummate the act of another, it is the intention of the Legislature that he should be invested with the option to sanction officially or to disapprove the act submitted to him. It involves the idea of discretion and adjudication. Yet such presumed intention is not conclusive, and if it clearly appears from the nature of the act, or the express language of the context, that the word "approved" is used in a more limited sense, and imposes a mere ministerial or clerical duty, the Courts will so hold. We had little difficulty in deciding that where the power of "approving" an

*appraisement* was confided in the Governor, he had a discretion to disapprove it. (*Berryman* v. *Perkins*, 55 Cal. 483.) So where a Board of Supervisors were *authorized* to contract for a map, it was held that it was intended by the Legislature to refer the propriety of purchasing the map to the local authorities. (*Bowers* v. *Sonoma Co.*, 32 Cal. 68.)     If we could believe, after considering the whole scheme for the formation, taxing, and government of the swamp and overflowed land districts, that it was intended that the Board of Supervisors should be *bound of course* to indorse as "approved" every warrant drawn by the trustees of a district, we would direct the writ to issue as prayed for.     But if, as we have seen, we consider this statute as confined to a district entirely in one county, it seems clear that the supervisors have had accorded to them a general supervision of the acts of the trustees, and have imposed upon them a duty to secure *just and prudent expenditures of moneys collected as assessments.*     All persons contracting with the trustees must be supposed to do so in view of the law, and with full knowledge that any warrant drawn by the trustees may be disapproved by the supervisors.

That the supervisors of each county in which any part of the district is situated, may intervene in the management of district affairs—at least to the extent of inspecting all contracts and accounts—that the trustees must transmit a copy of the petition on which the district was formed, to each of such Boards of Supervisors—that they are compelled to report to each their plans for work and estimates of cost—that the charge upon each separate tract is required to be paid into the treasury of the county where the tract lies—that the money thus deposited in several counties can be paid out only on the warrant of the trustees "approved" by the Board of Supervisors of the county on which the particular warrant is drawn—may, and probably does, interfere with the practical working of the scheme.     But it is *the* scheme which the statute has designed.

Each Board of Supervisors (when the district extends beyond a single county) has the same discretion with respect to warrants drawn upon their county, as has the board where the whole district is included within the boundaries of one

county. The Legislature has seen fit to declare, with reference to these matters, that before any of the money collected as an assessment upon lands in any county shall be paid away, its expenditure shall be approved not only by the trustees of the Land Districts, but also by the supervisors of the county.

Our conclusion is that the Court below properly sustained the demurrer.

Judgment affirmed.