## DUFF v. BAKER.

1. **Partnership:** FACTS CONSTITUTING. Where the owner and the occupier of land enter into an agreement, whereby the former is to furnish the land and improvements, together with farming implements, including hay-presses, and the latter is to furnish all seed and do all work, with the understanding that each is to have one-half of the net proceeds of the enterprise, they do not thereby become copartners; but where farming, in the sense of raising crops, was but a small part of the business, and they engaged openly, under a firm name, in the buying and selling of hay and coal, *held* that they became partners; at least as to such business.

2. ———: DISSOLUTION IN NAME BUT NOT IN FACT: LIABILITY TO THIRD PERSONS. Although the members of the firm of "B. & B." signed a notice of dissolution, which, however, was never published, and thereafter the same business was carried on by one of them only, in his own name, but in the interest of both of them, as before, *held* that they were both liable to a third person dealing with the one conducting the business, in the absence of any notice of a change in the firm.

*Appeal from Hancock District Court.*—HON. JOHN C. SHERWIN, Judge.

FILED, OCTOBER 24, 1889.

THIS is an action to recover the contract price for certain hay in the stack, sold by the plaintiff, as he

alleges, to a partnership firm of which the defendant was a member. The claim also includes an item for the boarding of certain employes of the partnership while engaged in pressing said hay. The defendant denied that he was a member of any partnership as alleged, and denied that the plaintiff had any valid claim against him on account of said hay. There was a trial to the court without a jury, and a judgment for the plaintiff. Defendant appeals.

*Cummins & Wright*, for appellant.

*Bush & Wichman*, for appellee.

ROTHROCK, J.—The only question to be determined upon this appeal is whether, under the evidence, the court was warranted in finding that the hay was sold to a partnership of which the defendant was at the time a member. It appears from the evidence that the defendant was the owner of a farm in Hancock county, which was improved to some extent, and upon which he had teams, farming utensils, a barn and machinery necessary for pressing hay. In the spring of 1883, one T. M. Brown was living on the farm, and an oral contract was at that time entered into between the defendant and Brown by which Brown was to have the use of the land, teams and implements, including the machinery for pressing hay, and to furnish all seed for planting crops, and do all the labor, and each one of the parties was to have one-half of the net proceeds of the enterprise. If this were all of the contract, there would have been no partnership; there would have been merely the relation of landlord and tenant between the parties. If an agreement of that kind were to be held by this court to be a partnership it would be a great surprise to thousands of landlords and tenants in this state; but there is evidence in the case which tends to show that more than this was contemplated by the parties. Baker was a resident of the city of Des Moines, and there was some correspondence between the parties, and he prepared a written contract and sent it to Brown. The writing was not signed. In

the course of this correspondence Baker wrote to Brown as follows, in reference to the written contract which Brown did not sign: "It was not intended, nor does it so state, that the money paid out for hay, for wire, for coal, etc., should be borne by you. The intention was to make it as nearly as possible your labor doing work against the use of the property. The wild hay, bought in stack or otherwise, I, of course, would expect to stand my part of cash." It further appears from the evidence that both parties contemplated the purchase and sale of hay. Indeed, the evidence tends to show that farming, in the sense of raising annual crops, was but a small part of the business. Brown carried on the business in the name of Baker & Brown, and the dealing with the public in that name was open, and without any conceal- ment. They also took up and carried on the business of dealers in coal to a certain extent. In July, 1884, there was a dissolution of the partnership agreed upon between the parties, and they signed the following writ- ten instrument:

BRITT, July 19, 1884.

*Notice:* The firm of Baker & Brown has been dis- solved by mutual consent.

"[Signed.]                         GEO. C. BAKER,
                                  "T. M. BROWN."

There can be no doubt that if the plaintiff had sold his hay to Brown before July 19, 1884, Baker would have been liable for the purchase as a partner. The question is, was there such a change in the business after that date as to exonerate Baker from liability to third persons dealing with Brown, without notice of the dissolution, or rather, was there evidence from which the court may have fairly found as a conclusion of law that Baker continued to be liable as a partner? Upon this question there is evidence that Brown, after the for- mal dissolution, used his own name in transacting the business in which both were interested. The notice of dissolution was not published, and the plaintiff, when he sold the hay for which he claims a judgment, had no knowledge of it. We think it is fair to say that, aside

from the dropping of the partnership name, there was no change in the relation of Baker & Brown towards each other. Brown testified as a witness upon the trial that the business was carried on after the ninteenth day of July, 1884, the same as it was before, except that the name in which it was transacted was Brown, instead of Baker & Brown. The plaintiff testified that he knew the name to be Baker & Brown, and that when he sold his hay he had no knowledge that the partnership had been dissolved. In our opinion the court was warranted in finding that, as to persons dealing with Brown without notice of the dissolution of the partnership, Baker was liable the same as if there had been no dissolution. Counsel for the respective parties have cited many authorities upon the law of partnership. We have not thought it necessary to examine them, because in our judgment the rights of the parties must be determined by the fact that they regarded themselves as partners from the nature of their business relations, and that no actual change in their affairs was effected by the formal dissolution. The judgment of the district court will be

AFFIRMED.